Rob Harley for Mr. Chen. I want to start by talking about the gun issue. All the cases cited in the briefs in the 28J letters stand for the proposition that this 924C violation requires a gun to be readily accessible. And my argument is a gun inside a closed gun case, which is hidden in an enclosed spare tire compartment in a locked trunk, is not a gun that's readily accessible. Also, there's been some generic testimony, at least argued by the government in its brief, about how drug dealers generally take guns to rob confidential informants and they take guns for protection. But that's inconsistent with the facts of this case because the facts show that Mr. Chen had an ongoing relationship with a confidential informant in this particular case, so there's no need for him to take a gun for protection. Also, the fact that he's taken a gun to rob or potentially rob the confidential informant is inconsistent with the facts because if that were true, he would have had the gun right next to him in the vehicle. Doesn't the statement you just made assume the conclusion? The fact that he knew him doesn't tell us what he knew about him. That's true, but the generic police officer's testimony indicates that they take guns for protection. If you have an ongoing relationship with somebody who you're selling drugs to, there's no need for you to take a gun. But that does assume your conclusion. You could have an ongoing relationship with someone you know to be dangerous. You do it for the money, not because you like the person. That is true. But then there is no need for him to have what I'm saying is his generic testimony does not help the prosecution to establish the inferiority. But that's a different point than my question. I think you've conceded that we don't know enough about their relationship to show that he had reason to trust them. Oh, I agree. But I was just addressing that police officer testimony because they seem to rely on that in order to hook up or establish some modicum of evidence to support this claim. That's in further requirement that's necessary for this gun allegation. Going down the suppression issue, my argument in a nutshell is when you're evaluating probable cause and the good faith exception, you're limited to the four corners of the affidavit. You cannot consider what the police officer know and fail to stick in that affidavit. And here you have an affidavit that's woefully deficient. It was filed May 15, 2007. Then the defense, recognizing there's deficiencies, files their motion to suppress. And then that is done on October 1, 2007. Then on October 19, 2007, the government gets around to getting the affiant, the investigating officer, to plug up and sure up what should have been put in that affidavit way back on May 15, 2007. That is objectively unreasonable to allow a police officer to do that. Every defense has filed their motion to suppress, relying on the affidavit that is woefully deficient. That is objectively unreasonable. The government attempts to sure up what is or was before the magistrate when he signed off on that affidavit on May 15, 2007, that there were three prior sales. But there's no dates. There's no location. We have no idea how stale those sales are. Fact number two, Mr. Chen spoke to the confidential informant on May 15, 2007, but there's nothing in that affidavit to say how he spoke to him, whether it was by cell phone, a landline, where the location was. Well, the district court said something to the effect that when a defendant emerges from a house to conduct a drug transaction, which was in the affidavit, doesn't pick up any drugs on the way, there's at least some reason to believe there are drugs in the house. And for that reason, the warrant was not so lacking an addition of probable causes to render the officer's reliance on it unreasonable. I mean, that sort of makes sense, doesn't it, that the officer say, we saw him go from the house to the drug deal, didn't stop on the way, and he had drugs. Why isn't that, even though that doesn't rise to the level of probable cause the district court found, why isn't it still sufficient so as not to make the officer's reliance unreasonable? I agree it does make some sense, but it does not supply enough evidence to pass this good faith reliance. And here's the reason, because we have no idea how long the police officers were sitting in that location. They could have just showed up. We don't know where Mr. Chen started driving. He could have started driving at a third location, stomped over the Welland Street address, picked up his girlfriend who was living there. We don't know the status of these two people, whether he was a renter, a mere visitor, or a tenant. We don't know the status of the passenger in the vehicle, whether she was a renter, a mere visitor, or a tenant. So if the police officers had been sitting on that location for several hours and then observed, hit the car there, or maybe some foot traffic or some other indicia suggesting some nefarious activity like drug dealing, then I would say it might perhaps rise to the level that would justify the good faith exception. But wouldn't that get you to probable cause? I mean, that would be probable cause. And the district court held, no, the warrant lacks probable cause. There isn't a nexus between the Welland address and the drugs in the trunk. But it's not so deficient that we'll say that no reasonable officer could have relied on it. All right. Well, let's eliminate the foot trafficking. Then I would say there has to be something in there to justify that the officers saw him there for some length of time to exclude the possibility that he just went over there to pick up his girlfriend to drive her to this drug location. So there's got to be something more to it than they just saw him leave the location at 5.56 p.m. and then the arrest taking place at 6.20 p.m. I think there has to be something more out there to justify this good faith exception than what's in the affidavit. Do we have any authority close to that that supports you? Well, in my brief, well, the Wong talks about, and this is a Ninth Circuit case, and I'm not sure whether I'm pronouncing it correctly, but an oral affidavit should not be used in order to bolster up a deficient affidavit to support good cause. But I think I basically rely on a Sixth Circuit case law, which indicates that you cannot consider what a police officer knew and fail to put it in his affidavit in order to justify an exception, a good cause exception. Well, in Fretas, I think when we were describing Loughton, the court says, we said there was no modicum of evidence, however slight, to connect in Fretas. So it distinguished Loughton and said there's no modicum of evidence, however slight, and that would be the reason here. There was at least a modicum of evidence to connect the drugs with the house. Isn't that right? Well, I guess our definition relies on the word modicum. If the police officer had been sitting there for a while and observing no activity, and then Mr. Chen exiting the residence, yes, there might be a modicum of evidence showing connection to that Welland Street address. But here we don't even have that. All we have is a statement saying he left the Welland Street address with a female friend and he was stopped some 36 minutes later with drugs in the vehicle and a gun in the trunk. So I don't think it rises to the modicum of evidence that's necessary to justify the good faith exception. Okay. May I stay in this position? Thank you. Thank you. Good morning. May it please the Court. Justin Rhodes on behalf of the United States of America. The first question before the Court today is whether, viewing all of the evidence presented to the jury at trial, in the light most favorable to the government, any rational juror could conclude that the loaded .45 caliber handgun that the defendant possessed in his car along with 3,000 pills of ecstasy while traveling to a prearranged drug transaction, or whether that firearm was possessed in furtherance of a drug trafficking crime. And the government would argue that there was both factual evidence at trial in the form of testimony about the gun, about where the defendant was traveling, the prior transactions, as well as expert testimony explaining how that gun might be used. So in our decision in Mann, we said a gun locked in a safe in a truck. That was not enough. That was not in furtherance. In Hector, we had a gun under a futon, and we said that was enough. Now, here we have a gun that's locked in the trunk, as opposing counsel indicates. Why is that not closer to Mann than to Hector? A couple of reasons, Your Honor. First of all, in Mann, the only way to get to the gun was to get out of the car, walk to the sleeping tent where the key to the locked safe was kept, and then come back. And I think more importantly, looking at Thomsey as a guiding light, the issue in Mann was that the truck was not the locus of drug activity. The locus was the methamphetamine lab that was set up in the forest. The defendants happened to arrive at the wrong time with the gun in the truck, but the truck was not the vehicle used for traveling. Whereas if you look at Hector, Hector, the deals were taking place in the apartment. The drugs were kept in the apartment. It was 700 feet, total square foot, so the defendant could move from one place to the other relatively easily. Here, the locus of the drug transaction was the vehicle itself. In all three prior transactions, the defendant had gotten his car, driven to a location, gotten out of his car, at which point he would have access to his gun, gotten into the confidential informant's car, done the deal, and then got back into his car and returned. Was there evidence in any of the other prior transactions that he retrieved his gun at any point? No. There is no evidence of that on the record. But I believe that raises an interesting question that Judge Sedgwick was discussing, was why, whether if you knew someone, why you would need a gun. Something that the court should take notice of is, in this case, the three prior transactions were all for 1,000 pills of ecstasy each, approximately $2,500 street value. In this case, in the third, the fourth transaction where he was arrested, it was 3,000 pills of ecstasy, three times as large for three times as much money. Any rational juror could conclude that now that I'm doing a deal that's much larger than I've done in the past, and I'm carrying more drugs and getting more cash, this may be the time of any time prior where I would need a gun, either to embolden myself or, as the cases may be, that he was considering robbing the confidential informant. He didn't need to have the gun on him because, as in the prior cases, he could stop, get out of his car, and get the gun. He was stopped by the police before he got to the parking lot where the transaction was going to happen, so we'll never know what his intentions were. This was a rented car? Can you run through the facts of this? Yes, Your Honor. As was presented at trial, this car was a Mercedes sedan, was rented the day before. The officer who made the traffic stop testified that there was nothing else in the trunk of the car save the gun, so the jury could conclude that the car that was rented a day before and now has a gun in it, the gun happens, the defendant admits he knows the gun is in the car. The gun had been placed there within the last 24 hours for some purpose, and it's a very natural conclusion that the gun was placed there for a drug trafficking crime. And he was stopped on his way to the transaction, is that right? That's correct. The traffic stop. That's correct. And that's actually in the affidavit. It says that the defendant was followed from the Welland Street address, which is in Temple City, and that the affidavit also says the transaction was to take place in Rosemead. So not to cross over the two issues here, but the officers did know that the defendant would have to travel to engage in the transaction. So this is not like the case where they were doing the transaction and then left the gun back in a locked case? Yes. This is not like Mann where they show up to the locus and the gun is locked and inaccessible. It's not like Rios where the sales of the pharmaceutical drugs were taking place out of one apartment. The defendant was arrested in his hotel room where there was no evidence any drugs had ever been. The only documents, the only evidence connecting him to drug sales at the hotel were conspiracy documents, prescriptions, et cetera, and the gun was an unloaded shotgun, and I don't believe there was any ammunition in the hotel room. And those are really the two cases that find, that have been cited from this circuit, that find no reasonable nexus. All of the other cases really point towards accessibility, proximity, and that can be as big as an apartment, as big as a living room, and in this case as close as a car. The second issue, briefly, is the good faith reliance issue. A couple of points I wanted to raise. First of all, the record states that Judge Walter, when considering the suppression issue, did not go beyond the four corners of the affidavit. That issue was raised, and that goes to whether or not Agent Rowell, who is the declarant, knew that Mr. Chen lived at this address. That, that, you know, the government submits that shouldn't be the case. It should be considered by the court. The only information that could be considered beyond the four corners, however, is that the affidavit was reviewed by an assistant U.S. attorney prior to submission. In cases like Sritas, suggested that it's both proper, and when the only issue before the court, the only Leon issue, is whether there was sufficient probable cause, that that weighs heavily in the government's favor if a D.D.A. district, deputy district attorney or an AUSA has ---- You don't mean sufficient probable cause. You mean whether there was enough there to be reasonable to rely on. Excuse me, Your Honor. Yes. Whether or not basically reasonable minds could differ as to whether there was probable cause. The closest case, I think, is Leon. And that's because the officer drafted some search warrants for several locations looking for drugs. And the court said that there was insufficient probable cause to connect the defendant Leon to that residence. But the court found that the officer sort of relied on good faith. I would note that in that case there was an attorney review of the warrant. The evidence in the warrant is very close, as Judge Walter noted. He said that the addition of one sentence, which was essentially that Howard Chen had been seen at this apartment or this house before and was residing there, would push this into the land of probable cause. The government is not contending that there was probable cause, but when the magistrate approves it, when an AUSA says there's enough, and when the district judge says it was missing one sentence, then the government submits that that puts it within the realm of reasonable minds could differ. There's no evidence, there's no Frank's issues that Agent Rowell made false statements. There's no argument that the warrant on its face was somehow overbroad or lacked specificity. So the only issue presented to the court is whether or not there was arguable probable cause or a sufficient nexus, as the defendant says, between Mr. Chen and the drug trafficking activity. And the affidavit says the house was under surveillance, that the defendant was seen leaving the house, made no stops, and 24 minutes later was found in a car with hundreds of ecstasy pills and a loaded gun, and that this isn't unexpected because that day they had set up a fourth transaction with a confidential informant that would require the defendant to leave, to arrive in Rosemead. And he was seen last in Temple City, arguing that there was a travel aspect and arguing that the defendant would be delivering pills from the residence where he was seen. Any further questions? Thank you. Thank you. Addressing the suppression motion first, I would cite that Cal 58F3rd cited in her briefs indicating the review of an assistant U.S. attorney really wasn't enough to save the warrants. So I think that fact is de minimis as far as the wages should be attached to the fact that the assistant U.S. attorney did evaluate it. Also, if you look at Ralph's affidavit, he evidently called his assistant U.S. attorney at 10 p.m. at night after working hours, presumably after he had his dinner and who knows what else. And so the fact that he reviewed at 10 o'clock at night, I think, is entitled to very little with any evidentiary weight in resolving the issue in the suppression motion. It has to take judicial notice that the assistant U.S. attorneys aren't quite with it at 10 o'clock at night. I'm going to quit while I'm ahead. The other issue is the gun count. I just wanted to highlight some of the things in the record indicating that Mr. Chen was a registered owner of the Chrysler 300. This vehicle was in the garage on the property located at Wallace Street. He was not the registered owner or was not connected up with the vehicle where the guns were seized. Also, his girlfriend, Ms. Height, the evidence shows that she was the one who purchased the gun. The dealer in the sales record for the gun had the name of Veronica Chee. I'm not sure if I'm pronouncing that correctly, but the gun came back to Veronica. And also, there's further evidence in there, although it did come from the appellant after his arrest that the vehicle belonged to his girlfriend and was a rented car by his girlfriend. So it's apparent from the evidence that this vehicle, where the guns and the drugs were seized, belonged to Veronica High, his girlfriend, who was a passenger at the time. Okay, you've used your time. Thank you. The case just argued is submitted for decision. We'll hear the next matter, United States v. Holland.
judges: Sedwick, Schroeder, Ikuta